Rebecca J. Fortune (SBN 229921)
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422; Facsimile: (619) 234-7692
E-mail: Rebecca.Fortune@kts-law.com

Attorney for Matthew J. Matson and Matson SDRE Group, LLC.

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>ROBERT M. EHNOW AND COLLETTE K EHNOW,<br>Debtors. | Case No. 16-05122-LA11<br>Adversary No. 17-90107-LA |
| MATTHEW J. MATSON, an individual, and MATSON SDRE GROUP, LLC, a California limited liability company,<br><br>Plaintiffs,<br>vs.<br><br>S.B.S. TRUST DEED NETWORK, a California corporation; BANK OF SOUTHERN CALIFORNIA, N.A.; ROBERT M. EHNOW, an individual; COLETTE K. EHNOW, an individual; and DOES 1 TO 10,<br><br>Defendants. | **DECLARATION OF REBECCA J. FORTUNE IN SUPPORT OF PLAINTIFFS MATTHEW J. MATSON'S AND MATSON SDRE GROUP, LLC'S *EX PARTE* APPLICATION FOR ORDER SHORTENING TIME TO HEAR THEIR MOTION FOR REMAND; OR, IN THE ALTERNATIVE, FOR AN ORDER CONTINUING BANK OF SOUTHERN CALIFORNIA, N.A.'S MOTION TO DISMISS**<br><br>Judge: Hon. Louise DeCarl Adler |

\\\

I, Rebecca J. Fortune, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am a partner in the San Diego office of Kimball, Tirey & St. John LLP, attorneys for Plaintiffs MATTHEW J. MATSON and MATSON SDRE GROUP, LLC. As such, I have personal and firsthand knowledge of the contents of this Declaration and if sworn as a witness I would and could testify competently thereto.

2. Given alleged irregularities in the process of the foreclosure sale conducted by Defendants BANK OF SOUTHERN CALIFORNIA, N.A. ("BoSC") and S.B.S. TRUST DEED NETWORK ("SBS") on March 1, 2017, on March 13, 2017, I filed the following documents in San Diego Superior Court Case No. 37-2017-00008676-CU-OR-CTL (the "State Court Action"): (a) Verified Complaint for Relief Based on Rescission as against only BoSC and SBS, (b) Summons identifying BoSC and SBS as the only named defendants, and (c) Ex Parte Application and Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued" ("Application for TRO").

3. At or about 3:10 p.m. on March 13th, I e-mailed a file-stamped copy of the Summons and Complaint, together with MATSON's *Ex Parte* Application for TRO, to SBS and BoSC. A true and correct copy of my March 13th Email, together with all attachments, is attached hereto as Exhibit "1" and is incorporated by reference herein.

prohibit Defendants' distribution of any proceeds paid by MATSON in connection with the foreclosure sale.

5. On March 16, 2017, I attended the hearing on MATSON's Application for TRO in Department C-62 of the San Diego Superior Court. BoSC's counsel, Mr. Christopher Ghio, appeared in person on BoSC's behalf. Because SBS had already distributed $417,879.71 to BoSC at the time of hearing, the Application for TRO was mooted as to BoSC. However, the State Court ***granted*** MATSON's Application for TRO as to SBS and prohibited SBS from distributing the $83,533.45 remaining in its' possession. In addition to issuing the TRO, the State Court also set a hearing on an Order to Show Cause Why a Preliminary Injunction Should Not be Entered as to SBS only. A true and correct copy of the "Order Granting Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued" is attached hereto as Exhibit "2" and is incorporated by reference herein.

6. At no time before or during the hearing on TRO did BoSC's counsel advise me or the State Court that this bankruptcy action was pending. Nor did BoSC challenge the State Court's jurisdiction in any regard.

7. On March 30, 2017, I attended the hearing on MATSON's Motion for Preliminary Injunction. Despite Mr. Ghio's appearance and argument in opposition to

the injunction, the State Court confirmed its Tentative Decision[1] and ***granted*** MATSON's request, issuing a Preliminary Injunction forbidding SBS' further distribution of funds received as a result of the foreclosure sale, finding a "probability" of success on the merits of MATSON's underlying claims.

8. While in attendance at the preliminary injunction hearing on March 30th, Mr. Ghio raised the issue that MATSON had not named Debtors as defendants in the State Court Action. However, in doing so, he did not alert me or the State Court to the pendency of this bankruptcy proceeding. As such, and after a very brief exchange, Judge Styn seemed to indicate a preference that any party with an interest in the property should likely be included as defendants in the State Court Action. Based on Judge Styn's stated preference at the time, and without the benefit of reviewing the pleadings on file in *this* matter, I filed a First Amended Complaint in the State Court Action, naming Debtors as nominal defendants, on or about April 10, 2017. However, the First Amended Complaint does not assert any affirmative claims against the Debtors or any of Debtors' property or assets. Rather, it seeks rescission of a contract entered into by and between SBS, BoSC and MATSON.

9. I received BoSC's Notice of Removal via regular mail on Friday, April 28, 2017. Upon receipt, I began researching the factual and legal issues involved. With the

[1] In its Tentative Decision, the State Court stated, in pertinent part, "[t]he court finds Plaintiff establishes a probability of prevailing on the merits." A true and copy of the State Court's Tentative Rule is attached hereto as Exhibit "3" and is incorporated by reference herein.

benefit of the new information gleaned (in large part by my review of the bankruptcy docket), I concluded that Debtors are not necessary parties to the State Court Action. As a result, on May 2, 2017, I submitted a Request for Dismissal in the State Court Action as to ROBERT M. EHNOW and COLLETTE K. EHNOW. Unfortunately, given BoSC's removal, the Request was rejected. A true and correct copy of the State Court's Rejection is attached hereto as Exhibit "4" and is incorporated by reference herein.

10. Before I had time to prepare and calendar a motion to remand, I received BoSC's Motion to Dismiss via regular mail on Friday, May 5, 2017. Immediately upon receipt of BoSC's Motion, I contacted the Court and obtained the earliest available hearing date for MATSON's Motion to Remand. Unfortunately, the earliest date available coincides with BoSC's Motion to Dismiss set for June 8, 2017 at 2:00 p.m.

11. In the event this Court chooses to remand the State Court Action, immediately upon the State Court's resumption of jurisdiction, I will re-file the Request for Dismissal as to Debtors.

12. By this Application, I am asking that the Court enter an Order either: (a) shortening time to hear MATSON's Motion to Remand, which is being filed concurrently herewith, or (b) continuing BoSC's Motion to Dismiss until a date after July 2, 2017.

13. I will be out of the country on pre-paid travel, and unable to appear at any hearing, from May 22, 2017 through May 26, 2017 and again from June 14, 2017 through

\\\

June 30, 2017.

I declare under penalty of perjury, pursuant to the laws of the State of California, that the foregoing is true and correct to the best of my knowledge.

Dated this 8th day of May, 2017.

*s/ Rebecca J. Fortune* .
Rebecca J. Fortune

# EXHIBIT "1"

**From:** Rebecca Fortune
**Sent:** Monday, March 13, 2017 3:10 PM
**To:** mitch@sbstrustdeed.com; ebarry@mulvaneybarry.com
**Subject:** Matson v. S.B.S. Trust Deed Network et al.
**Attachments:** 2016.03.13_Case Assignment_Taylor.pdf; 2017.03.13_Complaint.pdf; 2017.03.13_Cover Sheet.pdf; 2017.03.13_Summons.pdf; 2017.03.13_TRO_Application.pdf; 2017.03.13_TRO_Proposed Order.pdf

Good afternoon gentlemen. Please see attached – also sent via facsimile. The Summons and Complaint are being provided as a courtesy. For formal service, please let me know if counsel will accept service or if I should serve your respective agents.

Also, this case has thus far been assigned to Judge Taylor in Department 72. However, I expect Judge Taylor will recuse himself. For now, the ex parte is set for March 15th in Department 72 at 8:30. As soon as I receive confirmation of recusal and reassignment, I will let you know.

Please feel free to contact me with any questions. And, I do apologize that, given the exigencies involved, I was not able to speak with either of you before beginning this process. Please know that I hope to work cooperatively with both of you going forward.

Regards,
Rebecca

**Rebecca J. Fortune** | Partner
Kimball, Tirey & St. John LLP
*Business & Real Estate Group*
7676 Hazard Center Drive, Suite 900-B | San Diego, CA 92108
Phone 619.231.1422 Fax 619.234.7692| www.kts-law.com

Email is covered by the Electronics Privacy Act, 18 U.S.C. §§2510-2521, and is legally privileged. The information transmitted herewith is sensitive information intended only for use by the individual or entity to which it is addressed. It may also be protected communication under the Attorney/Client, and/or other privilege(s). If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission, dissemination, distribution, copying or other use of, or taking of any action in reliance upon this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

2017.03.13_TRO_Proposed Order.pdf

Rebecca J. Fortune (SBN 229921)
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692
E-mail: Rebecca.Fortune@kts-law.com

Attorney for Plaintiff, Matthew J. Matson.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN DIEGO

| | |
|---|---|
| MATTHEW J. MATSON, an individual,<br><br>Plaintiff,<br>vs.<br><br>S.B.S. TRUST DEED NETWORK, a California corporation; BANK OF SOUTHERN CALIFORNIA, N.A.; and DOES 1 TO 10,<br><br>Defendants. | Case No.: 37-2017-00008676-CU-OR-CTL<br><br>[PROPOSED] ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED<br><br>**Ex Parte Hearing:**<br>Date: March 15, 2017<br>Time: 8:30 a.m.<br>Dept.: C-72<br><br>**OSC Hearing:**<br>Date: TBD<br>Time: TBD<br>Dept: TBD<br><br>Case Filed: March 13, 2017 |

The Court, having considered Plaintiff MATTHEW J. MATSON's *Ex Parte* Application for Temporary Restraining Order, the Memorandum of Points and Authorities in support thereof, Plaintiff's Verified Complaint all other pleadings on file in this action, as well as all oral arguments, if any at the time of hearing and good cause appearing:

\\\

\\\

\\\

2017.03.13_TRO_Propose

**TEMPORARY RESTRAINING ORDER**

**IT IS HEREBY ORDERED** that Defendants S.B.S. TRUST DEED NETWORK and/or BANK OF SOUTHER CALIFORNIA, N.A. and their officers, directors, agents and employees, and all other persons acting under, in concert with, or for them who have actual or constructive knowledge of this Order: Shall not distribute, transfer, encumber, dispose of, dilute or in any other way diminish the $505,000.00 tendered by Plaintiff MATTHEW J. MATSON to Defendant S.B.S. TRUST DEED NETWORK via three cashier's checks endorsed on March 1, 2017.

**ORDER TO SHOW CAUSE**

**IT IS HEREBY ORDERED TO SHOW CAUSE** at _______ on ___________, 2017, or as soon thereafter as counsel may be heard in Department ____ of the above entitled Court located at 330 W. Broadway, San Diego, California 92101, why you, your agents, employees, assigns, representatives, attorneys, and all those acting in concert with you, should not be restrained and enjoined pending trial of this action from: distributing, transferring, encumbering, disposing of, diluting or in any other way diminishing the $505,000.00 tendered by Plaintiff MATTHEW J. MATSON to Defendant S.B.S. TRUST DEED NETWORK via three cashier's checks endorsed on March 1, 2017.

This Temporary Restraining Order and Order to Show Cause and supporting papers shall be served on the Defendants no later than ______________ by _______________________ service. Proof of such service shall be filed and delivered in the manner provided by Code of Civil Procedure §527.

The following briefing schedule shall apply:

1. Any Opposition by Defendant(s) to this Temporary Restraining Order and Order to Show Cause shall be filed directly with this court in Department ___ and served on counsel for Plaintiff no later than _____________________. This service may be by any method allowed by law, including by e-mail transmission and overnight delivery.

2. Any Reply of Plaintiff to Defendants' opposition shall be filed and served on the Defendants no later than ____________________. This service may be by any method allowed by law, including by e-mail transmission and overnight delivery.

3. The Restraining Order granted herein shall expire on ___________________________.

2017.03.13_TRO_Proposed Order.pdf

4. Plaintiff shall not be required to post a bond for this temporary order.

Dated: ________________

________________________________________
Judge of the Superior Court

2017.03.13_TRO_Application.pdf

Rebecca J. Fortune (SBN 229921)
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692
E-mail: Rebecca.Fortune@kts-law.com

Attorney for Plaintiff, Matthew J. Matson.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| MATTHEW J. MATSON, an individual,<br><br>Plaintiff,<br>vs.<br><br>S.B.S. TRUST DEED NETWORK, a California corporation; BANK OF SOUTHERN CALIFORNIA, N.A.; and DOES 1 TO 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S NOTICE OF *EX PARTE* APPLICATION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF REBECCA J. FORTUNE**<br><br>Ex Parte Hearing Date: March 15, 2017<br>Hearing Time: 8:30 a.m.<br><br>Judge: Hon. Timothy Taylor<br>Dept.: C-72<br><br>Case Filed: March 13, 2017 |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 15, 2017, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department C-72 of the above-entitled Court, Plaintiff MATTHEW J. MATSON will, and hereby does, apply to the Court, *ex parte*, for a Temporary Restraining Order and an Order to Show Cause as to why a preliminary injunction should not be issued enjoining Defendants S.B.S. TRUST DEED NETWORK ("SBS") and/or BANK OF SOUTHERN CALIFORNIA, N.A. ("BoSC") from distributing any funds paid to SBS by Plaintiff as the result of a mistake of fact.

This *Ex Parte* Application is made pursuant to California Code of Civil Procedure Sections 526 and 527, as well as California Rules of Court, Rule 3.1204, on the grounds that issuance of the order is necessary to maintain the status quo and avoid irreparable harm to Plaintiff. In particular, Plaintiff may not obtain an adequate relief at law due to certain statutory protections which may limit a foreclosure trustee's liability for damages. As such, if the $502,000 at issue in this matter is distributed by SBS and Plaintiff is prohibited from pursuing a damage claim against SBS, he will suffer irreparable harm.

Because the relief requested herein merely preserves the status quo and leaves all funds in possession of Defendants, neither SBS nor BoSC will suffer any injury if the application is granted

This *Ex Parte* Application is based on the Verified Complaint on file in this case, the accompanying Memorandum of Points and Authorities, the declaration of Rebecca J. Fortune, the proposed Temporary Restraining Order and Order to Show Cause, all the pleadings, files and records in this matter and upon such other oral and documentary evidence as may be submitted at the hearing of this *Ex Parte* Application.

Respectfully submitted,

KIMBALL, TIREY & ST. JOHN LLP

Dated this 13th day of March, 2017.

Rebecca J. Fortune
Attorney for Plaintiff, Matthew J. Matson

2017.03.13_TRO_Application.pdf

## MEMORANDUM OF POINTS AND AUTHORITIES

By and through his attorney of record, Plaintiff MATTHEW J. MATSON respectfully submits this *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued.

## I.

## INTRODUCTION

### A. Nature of this *Ex Parte* Application.

On March 1, 2017, Plaintiff tendered $505,000.00 in cashier's checks to Defendant S.B.S. TRUST DEED NETWORK ("SBS"), trustee on a foreclosure sale of residential real property. Plaintiff's tender was under the mistaken belief that he was purchasing a debt in first position on title. Had Plaintiff's then-held belief been correct, the purchase would have had a net value of approximately $48,000.00. However, in the hours after sale, Plaintiff learned that the loan sold by SBS was in second position, not first, behind an additional lien with a believed balance in the approximate amount of $430,000. As a result, where Plaintiff believed the transaction would create a gain of approximately $48,000, it actually creates a loss <u>in excess of $400,000.00</u>.

Plaintiff acted immediately to put Defendants on notice that he intended to rescind the transaction. On March 2nd, the day after the sale, Plaintiff's counsel faxed and e-mailed a letter to SBS providing notice of the problem and advising that Plaintiff had attempted to place a stop payment on all cashier's checks tendered[1]. On Friday, March 3rd, Plaintiff's counsel received a telephone call from an SBS representative and reiterated Plaintiff's intent to rescind. On that same day, Plaintiff personally contacted the main branch of the beneficiary bank, Defendant BANK OF SOUTHERN CALIFORNIA, N.A. ("BoSC") located in Del Mar, California and sought a meeting with the bank's president. On Monday, March 6th, Plaintiff met with BoSC's attorney where he confirmed the issue and provided BoSC notice of his intent to rescind. At that meeting, Plaintiff offered several compromised solutions to assure that both SBS and BoSC were made whole in the event of rescission. On March 8, 2017, BoSC's counsel sent confirmation to Plaintiff that it would not agree to rescind or to resolve the issue via any compromised solution. On Thursday, March 9, 2017, Plaintiff's counsel sent formal Notice of

---

[1] Unfortunately, it turned out that the issuing bank on the cashier's checks and the beneficiary bank on the foreclosure sale are one in the same, Defendant BoSC. As a result, BoSC refused to stop payment on the $502,000 in cashier's checks.

2017.03.13_TRO_Application.pdf

Rescission and Request for Restitution to both SBS and BoSC. This Complaint was filed on Monday, March 13, 2017.

**B. Statement of Facts**

1. On the morning of March 1, 2017, Defendant S.B.S. TRUST DEED NETWORK ("SBS") was set to conduct a foreclosure sale of certain residential real property located at 701 Kettner Boulevard #124, San Diego, California 92101 (hereinafter, the "Property"). (*See* Plaintiff's Verified Complaint, paragraph 11)[2].

2. The foreclosure sale was advertised on a website commonly known and widely utilized by individuals and/or entities in the business of purchasing real property in foreclosure, e.g. "Property Radar" (http://www.propertyradar.com) formerly, "Foreclosure Radar." (*See* VC, ¶12).

3. As of the morning of March 1, 2017 at or about 8:50 a.m., the Property Radar Website provided the following information regarding the deed of trust to be sold pursuant to foreclosure by SBS: (a) Loan Balance: $412,241.00, (b) Starting bid: $71,000.00, (c) Loan Position: First (1st), and (d) Equity: $189,343.00. (*See* VC, ¶13).

4. In an effort to verify the information provided on Property Radar, Plaintiff also ordered a property profile from Chicago Title. (*See* VC, ¶14).

5. Based on the information provided by Property Radar and Chicago Title, and given equity in excess of $150,000, Plaintiff contacted his personal bank, Defendant BoSC, to arrange for $535,000 in cashier's checks to be paid to the foreclosure trustee in the event of a successful bid on the Property. (*See* VC, ¶15).

6. Upon arrival at the courthouse, Plaintiff qualified for the sale with at least two additional bidders holding amounts in excess of $600,000 each, e.g. amounts in excess of what Plaintiff was prepared to spend. (*See* VC, ¶16).

7. Plaintiff opened the bidding at $71,100. Thereafter, he participated in competing bids until one of the other two bidders reached $501,000. Plaintiff ultimately won the auction with a final bid of $502,000.00. (*See* VC, ¶17).

---

[2] Future references to Plaintiff's Verified Complaint will be listed as "VC" with paragraph (¶) numbers where appropriate.

2017.03.13_TRO_Application.pdf

8. At no time before or during the bidding process did Defendant SBS identify the beneficiary bank that owned the trust deed being sold. Nor did SBS provide notice to bidders that the deed was not in first position on title. (*See* VC, ¶18).

9. Later in the evening of March 1, 2017, Plaintiff placed a telephone call to a real estate agent who had a then-active listing on the Property. After Plaintiff notified the agent of his purchase of the Property, the agent told him, for the first time, that the trust deed purchased may have been in second position, and not first. (*See* VC, ¶20).

10. Though Plaintiff has been able to identify the bank that may be holding a first deed of trust on the Property (Bank of America), as of the date of the VC and of this Application, Plaintiff has been unable to confirm the precise amount outstanding. Based on currently available information, Plaintiff currently believes the value of Bank of America's first deed of trust is in excess of $430,000. (*See* VC, ¶22).

11. As of the date of the VC and of this Application, Plaintiff estimates the Property's fair market value to be $550,000.00 as of the date of sale on March 1, 2017. Therefore, as a result of Plaintiff's $502,000 bid and an existing first mortgage in excess of $430,000, Plaintiff's effectual purchase price amounted to approximately $932,000 – on a home valued at approximately $550,000. (*See* VC, ¶23).

12. On the same day Plaintiff discovered the existence of a first mortgage (March 2nd), he called his personal bank, Defendant BoSC, and asked that BoSC immediately stop payment on all cashier's checks issued on March 1, 2017. (*See* VC, ¶24).

13. Initially, Plaintiff believed that a misrepresentation had occurred. As a result, he instructed his counsel to provide notice to Defendant SBS. (*See* VC, ¶25). In such notice, sent the afternoon of March 2nd (only one day after the sale), Plaintiff's counsel advised SBS (via e-mail and facsimile) that Plaintiff, having learned the true nature of the trust deed's position on title, no longer wished to purchase the Property and had asked that his bank put a stop payment on all cashier's checks tendered in payment to SBS. (*See* VC, ¶26).

14. On or about March 3, 2017, Plaintiff learned that his personal bank, Defendant BoSC, was also the foreclosing bank under the trust deed he had purchased on March 1st. As such, Plaintiff

2017.03.13_TRO_Application.pdf

realized that the cashier's checks used to pay SBS would ultimately be distributed to BoSC, e.g. Defendant BoSC would personally benefit by refusing Plaintiff's March 2nd request to stop payment on the cashier's checks. (*See* VC, ¶28).

15. In further attempt to mitigate his loss and also avoid the occurrence of SBS' and/or BoSC's changed position, on Friday, March 3rd, Plaintiff made arrangements to meet with BoSC's attorney on Monday, March 6th. During that meeting, Plaintiff specifically asked that BoSC rescind the sale and refund all funds paid to SBS. In the alternative, Plaintiff presented several compromised offers to BoSC in an attempt to mitigate Plaintiff's loss and make BoSC whole. In concluding the meeting, BoSC's attorney advised that he would meet with his client and get back to Plaintiff with the bank's response. (*See* VC, ¶¶ 29-31).

16. On Wednesday, March 8th at 5:09 p.m., BoSC provided notice to Plaintiff that it would not rescind the transaction, nor would it entertain any compromised resolution. (*See* VC, ¶32).

17. On March 9, 2017, Plaintiff sent formal Notice of Rescission and Request for Restitution ("Notice of Rescission") to SBS. A true and correct copy of Plaintiff's Notice of Rescission is attached to the VC as Exhibit "1." In addition to placing Defendants on notice of Plaintiff's election to rescind the foreclosure sale, the Notice of Rescission also instructed SBS not to distribute any funds received from Matson and to direct any and all SBS employees or representatives of the same pending resolution of all legal claims. (*See* VC, ¶33).

## II.

## LEGAL ANALYSIS

### A. Appropriateness of Procedure

#### 1. *Ex Parte* Relief.

A party may apply, *ex parte*, for a temporary restraining order when the circumstances suggest irreparable harm, immediate danger, or any other statutory basis for ex parte relief. Cal. Rules Ct. R. 3.1150(g) and R. 3.1202(c). Additionally, California Rules of Court, Rule 3.1150 provides, in pertinent part:

> A party requesting a preliminary injunction may give notice of the request to the opposing or responding party either by serving a noticed motion under Code of Civil Procedure section 1005 or by obtaining and serving an order to show cause (OSC). An OSC must be used when a temporary restraining

2017.03.13_TRO_Application.pdf

> order (TRO) is sought, or if the party against whom the preliminary injunction is sought has not appeared in the action. Cal. Rules Ct. R. 3.1150(a).

If a plaintiff does not obtain an order to show cause as a means of providing notice to the Defendant of the hearing on the preliminary injunction, it must wait for an appearance by the defendant so it can serve an ordinary noticed motion. *See* Cal. Code Civ. Proc. §§528 and 1005.

Given certain statutory protections that may be afforded SBS as a foreclosure trustee on claims for damages (as opposed to restitution), as soon as SBS distributes funds received in connection with the March 1st foreclosure sale, Plaintiff may be left without any remedy at all, e.g. SBS may extinguish the opportunity for rescission. For example, because this action arises out of a foreclosure sale, it is highly probable that funds received by SBS will be sought by other creditors – creditors against whom Plaintiff will have no viable claim for recovery. And, since nearly two weeks have passed since the date of sale, time is of the essence if Plaintiff is to avoid the irreparable damage of losing nearly a half-million dollars.

**2. Order Shortening Time.**

In the event the Court determines that this *Ex Parte* Application is not an appropriate means for seeking the relief requested by Plaintiff, Plaintiff alternatively requests the Court shorten time for giving written notice of a motion for a preliminary injunction. The time requirements for written notice on noticed motions are set forth in California Code of Civil Procedure §1005. Moving and supporting papers must generally be served and filed sixteen (16) court days prior to the hearing. Cal. Code Civ. Proc. §1005(b). However, a court can prescribe shorter times for the filing and service of moving and supporting papers (as well as opposition and reply papers) upon application of a party for an order shortening time supported by a declaration showing good cause. Cal. Code Civ. Proc. §1005(b); Cal. Rules of Ct., R 3.1300.

Good cause exists for an order shortening time under the present circumstances. As stated above, once funds are distributed by SBS, any hope Plaintiff has of recovering more than $500,000 may be wholly extinguished. Thus, an order shortening time for the hearing of a motion for a preliminary injunction is necessary if Plaintiff is denied *ex parte* relief.

\\\

2017.03.13_TRO_Application.pdf

**B. The Court Should Enjoin Defendant SBS' Distribution of Sale Proceeds.**

Without the requested injunctive relief, Plaintiff is almost certain to suffer a loss of more than four hundred thousand dollars.

**1. Plaintiff is likely to succeed on the merits.**

Courts must consider a plaintiff's likelihood of prevailing on the merits at trial in determining whether to grant or deny a preliminary injunction. *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442 ("*Common Cause*"); *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493. If it's likely the applicant will succeed on the merits, it's more appropriate that the injunction issue, especially when it will preserve the status quo. *King v. Meese* (1987) 43 Cal.3d 1217, 1227.

**a. Plaintiff made a mistake of fact regarding a material term of the contract allowing for rescission of the foreclosure sale.**

A "mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, 2. Belief in the present existence of a thing material to the contract, which does not exist..." Cal. Civ. Code §1577. Rescission is appropriate when the mistake is material to the contract, enforcement would be unconscionable, the other party can be placed in status quo and the party seeking relief provided notice of his election to rescind. *Donovan v. Rrl Corp.* (2001) 26 Cal. 4th 261, 280 ("*Donovan*"); *Elsinore Union Elementary School Dist. V. Kastorff* (1960) 54 Cal. 2d 380, 386 ("*Elsinore*"). Both courts and legal scholars are recognizing "a growing willingness to allow avoidance where the consequences of the mistake are so grave that enforcement of the contract would be unconscionable." *Donovan supra*, at 281, citing Rest. 2d Contracts, §153(a).

In a case similar to this one, the California Court of Appeal allowed a foreclosure trustee to rescind a sale after discovery that he, the trustee, made a mistake of fact that resulted in a substantial underpayment to the beneficiary bank. In *Angell v. Superior Court*, a trustee conducted a foreclosure sale on a deed of trust without realizing that the deed being sold secured two loans, instead of just one. While the deed secured one note for $350,000 and another for $2.7 million, the trustee accepted payment satisfying only the lesser amount – leaving more than $2 million outstanding. Only after the

2017.03.13_TRO_Application.pdf

sale was completed did the trustee realize his error. And, though the true information was available and should have been known by the trustee at the time of sale, given the gross inadequacy of the price paid, the significant loss that would have been incurred by the beneficiary bank and the fact that the other party could be made whole by simply refunding all amounts paid, the Court found in favor of the trustee and ordered the rescission of the transaction. *Angell v. Superior Court* (1999) 73 Cal. App. 4th 691 ("*Angell*").

Here, we have the flip side of the very same coin. In this case, instead of the seller mistakenly closing a transaction with a gross underpayment, we have a buyer tendering a gross overpayment. But for a catastrophic mistake as to a material term of the contract, there can be no question that a reasonable purchaser would *never* spend more than $900,000 on a property worth only $550,000.00. Surely what was good for the proverbial goose in *Angell*, will also be available to Plaintiff in the current circumstance.

**2. The equities are in favor of enjoining SBS' distribution.**

A court must balance the harm a plaintiff will suffer if the injunction is denied against the harm the defendant will suffer if the injunction is issued. *Common Cause supra*, at 441-442. By balancing the equities, a court should be able to determine whether or not to grant an injunction which restrains a defendant's actions pending a final determination on the merits. *Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1681.

If Defendants are permitted to distribute funds before the merits of this case is heard, Plaintiff is likely to lose any recourse to recover the $502,000 paid. Conversely, if distribution is enjoined, Defendants suffer no harm as the status quo is simply maintained pending final resolution, e.g. Defendants maintain possession of the funds and/or are still free to conduct another foreclosure sale.

**3. Monetary damages may not be an adequate remedy.**

In most cases, money damages will adequately compensate a plaintiff for losses. Here, that is not the case. Given protections that may be afforded SBS as a foreclosure trustee with regard to damage claims, and the near impossibility of recovering funds from third party creditors after distribution, once Plaintiff's $502,000 leaves SBS' and/or BoSC's hands, it's very much in the wind and would be profoundly difficult, if not entirely impossible, for Plaintiff to recover.

### 4. Enjoining distribution will maintain the status quo.

To the best of Plaintiff's knowledge, SBS is currently holding all funds received from Plaintiff in trust for further distribution to co-defendant BoSC and/or other third party creditors of the underlying borrower. Prohibiting distribution will not negatively impact Defendants in any regard. Funds will remain in their possession until this matter is resolved. Or, because Plaintiff has not and will not record a new trustee's deed, Defendants also have the option of making themselves whole by simply conducting another foreclosure sale.

## IV.

## CONCLUSION

"Unconscionable – Shockingly unfair or unjust" (https://www.merriam-webster.com/dictionary/unconscionable). The Court's inquiry in the current matter is relatively simple – is it shockingly unfair or unjust for a seller in a transaction to receiver nearly $100,000 more than the value of the product sold when, in the same transaction, the buyer suffers a real and inescapable loss of more than $400,000? Put another way, is it reasonable to enforce a contract for the sale of real property, entered into based on a grave mistake of fact, when enforcement would result in the immediate loss of $400,000 by buyer? In *Angell*, the Court of Appeal of California concluded that it was not reasonable for a foreclosure trustee to incur this very same type of loss. By this Application, Plaintiff begs that this Court apply the same equitable principles and issue a temporary restraining order prohibiting Defendants' distribution of funds pending resolution on the merits of Plaintiff's claim.

Respectfully submitted,

KIMBALL, TIREY & ST. JOHN LLP

Dated this 13th day of March, 2017.

Rebecca J. Fortune
Attorney for Plaintiff, Matthew J. Matson

**DECLARATION OF REBECCA J. FORTUNE**

I, Rebecca J. Fortune, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am a partner in the San Diego office of Kimball, Tirey & St. John LLP, attorneys for Plaintiff MATTHEW J. MATSON. As such, I have personal and firsthand knowledge of the contents of this Declaration and if sworn as a witness I would and could testify competently thereto.

2. On March 13, 2017 at or about 2:45 p.m. I provided notice of this *ex parte* and a full set of all papers being filed in conjunction herewith as follows:

a. To Defendant SBS' registered agent for service of process: Mr. Mitchell Willet at 31194 La Baya Drive, Suite 106, Westlake Village, California 91362 via facsimile (818-874-9500) and e-mail (mitch@sbstrustdeed.com). A true and correct copy of the successful facsimile transmittal sheet is attached hereto as Exhibit "1"; and

b. To Defendant BoSC's attorney, Everett G. Barry, Jr., Mulvaney, Barry, Beatty, Linn & Mayers, LLP, 401 W. A Street, 17th Floor, San Diego, California 92101 via facsimile (619-238-1981) and e-mail (ebarry@mulvaneybarry.com).A true and correct copy of the successful facsimile transmittal sheet is attached hereto as Exhibit "2."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on March 13, 2017 at San Diego, California.

Rebecca J. Fortune

2017.03.13_TRO_Application.pdf

# EXHIBIT "1"

*********************
*** FAX TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| JOB NO. | 4837 |
| DESTINATION ADDRESS | 18188749500 |
| SUBADDRESS | |
| DESTINATION ID | |
| ST. TIME | 03/13 13:42 |
| TX/RX TIME | 04'55 |
| PGS. | 15 |
| RESULT | OK |

L A W O F F I C E S O F
**Kimball, Tirey & St. John LLP**

**Business and Real Estate Group**
7676 Hazard Center Drive, Suite 900 ◆ San Diego, CA 92108
(619) 231-1422 ◆ Fax (619) 234-7692

| TIME FAXED |
|---|
| am / pm |
| BY |
| (initial) |

# FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **To:** | Mitchell Willet / Everett Barry, Esq. | **From:** | Rebecca J. Fortune |
| **Fax:** | (818) 874-9500 / (619) 238-1981 | **Pages:** | 15 including cover sheet |
| **Phone:** | (619) 881-4999 | **Date:** | Monday, March 13, 2017 |
| **Re:** | TS 2016.1691 / 701 KETTNER #124 | **cc:** | |

☐ **Transmitted via facsimile only** ☐ **Copy to follow via First Class mail**

☐ **Copy to follow via overnight delivery** ☒ **Other: Via e-mail as well**

☒ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

- **Comments:**

Please see attached.

2017.03.13_TRO_Application.pdf

# EXHIBIT "2"

*********************
*** FAX TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| JOB NO. | 4838 |
| DESTINATION ADDRESS | 2381981 |
| SUBADDRESS | |
| DESTINATION ID | |
| ST. TIME | 03/13 13:47 |
| TX/RX TIME | 02'16 |
| PGS. | 12 |
| RESULT | OK |


L A W O F F I C E S O F

**Kimball, Tirey & St. John LLP**

**Business and Real Estate Group**
7676 Hazard Center Drive, Suite 900 ◆ San Diego, CA 92108
(619) 231-1422 ◆ Fax (619) 234-7692


**TIME FAXED**
am / pm
**BY**
(initial)

# FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **To:** | Mitchell Willet / Everett Barry, Esq. | **From:** | Rebecca J. Fortune |
| **Fax:** | (818) 874-9500 / (619) 238-1981 | **Pages:** | 15 including cover sheet |
| **Phone:** | (619) 881-4999 | **Date:** | Monday, March 13, 2017 |
| **Re:** | TS 2016.1691 / 701 KETTNER #124 | **cc:** | |

☐ **Transmitted via facsimile only** ☐ **Copy to follow via First Class mail**

☐ **Copy to follow via overnight delivery** ☒ **Other: Via e-mail as well**

☒ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

● **Comments:**

Please see attached.

2017.03.13_Summons.pdf

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

BUSINESS OFFICE
CENTRAL DIVISION
2017 MAR 13 AM 10: 22
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

S.B.S. TRUST DEED NETWORK and BANK OF SOUTHERN CALIFORNIA, N.A.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

MATTHEW J. MATSON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org), *en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):*
37-2017-00008676-CU-OR-CTL

San Diego Superior Court
330 West Broadway, San Diego, California 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Rebecca J. Fortune, 7676 Hazard Center Drive, Ste 900, San Diego, CA 92108

DATE: *(Fecha)* MAR 1 3 2017    Clerk, by *(Secretario)* C. Brennan, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):*

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☑ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

2017.03.13_Cover Sheet.pdf

Rebecca J. Fortune (SBN 229921)
7676 Hazard Center Drive, Suite 900
San Diego, California 92108
TELEPHONE NO.: (619) 231-1422 FAX NO.: (619) 234-7692
ATTORNEY FOR (Name): Matthew J. Matson

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central Branch

FILED
CIVIL BUSINESS OFFICE 2
CENTRAL DIVISION
2017 MAR 13 AM 10: 22
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

CASE NAME:
MATTHEW J. MATSON v. S.B.S. TRUST DEED NETWORK et al.

## CIVIL CASE COVER SHEET

- [x] Unlimited (Amount demanded exceeds $25,000)
- [ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2017-00008676-CU-OR-CTL
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [x] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: One (1)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 13, 2017
Rebecca J. Fortune
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

VIA FAX

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

2017.03.13_Complaint.pdf

Rebecca J. Fortune (SBN 229921)
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692
E-mail: Rebecca.Fortune@kts-law.com

Attorney for Plaintiff, Matthew J. Matson.

FILED
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

2017 MAR 13 AM 10: 22

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN DIEGO**

| | |
|---|---|
| MATTHEW J. MATSON, an individual,<br><br>Plaintiff,<br>vs.<br><br>S.B.S. TRUST DEED NETWORK, a California corporation; BANK OF SOUTHERN CALIFORNIA, N.A.; and DOES 1 TO 10,<br><br>Defendants. | Case No. 37-2017-00008676-CU-OR-CTL<br><br>**COMPLAINT FOR RELIEF BASED ON RESCISSION; FOR MONEY HAD AND RECEIVED; OR, IN THE ALTERNATIVE, FOR DAMAGES**<br>**[Cal. Civ. Code §§ 1577 and 1689(b)(1)]**<br><br>**Unlimited Jurisdiction**<br>**[Amount in Controversy Exceeds $25,000]** |

COMES NOW, Plaintiff MATTHEW J. MATSON and alleges the following Complaint for Rescission and Restitution as against Defendants S.B.S. TRUST DEED NETWORK and BANK OF SOUTHERN CALIFORNIA, N.A.:

**PARTIES**

1. Plaintiff MATTHEW J. MATSON (hereinafter, "Plaintiff" or "Matson") is an individual residing in the City and County of San Diego, California.

2. Defendant S.B.S. TRUST DEED NETWORK (hereinafter, "SBS") is a California corporation which conducts business within the City and County of San Diego, State of California.

3. Defendant BANK OF SOUTHERN CALIFORNIA, N.A. (hereinafter, "BoSC") is a national association which conducts business within the City and County of San Diego, State of California.

2017.03.13_Complaint.pdf

4. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 to 10 and, therefore, sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

5. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries and damages as herein alleged were directly, proximately, and/or legally caused by defendants, and all of their acts.

6. Plaintiff is informed and believes, and thereon alleges, that the aforementioned DOES are somehow responsible for the acts alleged herein as the agents, employers, representatives, or employees of other named defendants, and in doing the acts alleged herein, were acting within the scope of their agency, employment, or representative capacity, as said named defendants, or of each other.

7. Plaintiff is informed and believes, and thereon alleges, that each of these defendants named herein, are the agents, employers' representatives, or employees of the other named defendants, and in performing the acts alleged herein, were acting within the scope of their agency, employment, and/or representative capacity, and are therefore responsible for the acts complained of herein.

**JURISDICTION AND VENUE**

8. Subject matter jurisdiction is vested in this Court in that the matter is civil and that Plaintiff seeks only equitable relief.

9. Personal jurisdiction is derived from the fact that Defendants conducted business in the City and County of San Diego, State of California.

10. Venue is proper within this district because the transaction giving rise to this action occurred in this judicial district.

**GENERAL ALLEGATIONS**

11. On or about March 1, 2017, Defendant SBS conducted a foreclosure sale of certain residential real property located at 701 Kettner Boulevard #124, San Diego, California 92101 (hereinafter, the "Property").

\\\

\\\

2017.03.13_Complaint.pdf

12. The foreclosure sale was advertised on a website commonly known and widely utilized by individuals and/or entities in the business of purchasing real property in foreclosure, e.g. "Property Radar" (http://www.propertyradar.com) formerly, "Foreclosure Radar."

13. As of the morning of March 1, 2017 at or about 8:50 a.m., the Property Radar Website provided the following information regarding the deed of trust to be sold pursuant to foreclosure by SBS: (a) Loan Balance: $412,241.00, (b) Starting bid: $71,000.00, (c) Loan Position: First (1), and (d) Equity: $189,343.00.

14. In an effort to verify the information provided on Property Radar, Plaintiff also ordered a property profile from Chicago Title.

15. Based on the information provided by Property Radar and Chicago Title, and given equity in excess of $150,000, Plaintiff contacted his personal bank, Defendant BoSC, to arrange for $535,000 in cashier's checks to be paid to the foreclosure trustee in the event of a successful bid on the Property.

16. Plaintiff arrived at the courthouse for the foreclosure sale at approximately 10:35 a.m. Upon arrival, Plaintiff observed the auctioneer identify the Property for sale and asked who, of the approximately twelve people in attendance, wished to qualify. Plaintiff was the third to qualify, confirming his possession of funds in the amount of $535,000. On information and belief, and thereon alleged, at least two other bidders qualified with amounts on hand in excess of $600,000.

17. Plaintiff opened the bidding at $71,100. Thereafter, he participated in competing bids until one of the other two bidders reached $501,000. Plaintiff ultimately won the auction with a final bid of $502,000.00.

18. At no time before or during the bidding process did Defendant SBS identify the beneficiary bank that owned the trust deed being sold. Nor did SBS provide notice to bidders that the deed was not in first position on title.

19. Upon acceptance of Plaintiff's bid, the auctioneer, James Rudolph, provided Plaintiff with a document entitled "Receipt of Funds" noting Plaintiff's payment of $505,000.00 to Defendant SBS.

\\\

2017.03.13_Complaint.pdf

20. On the same day, at or about 6:18 p.m., Plaintiff placed a telephone call to a real estate agent who had a then-active listing on the Property. After Plaintiff notified the agent of his purchase, the agent told him, for the first time, that the trust deed purchased may have been in second position, and not first. After concluding his conversation with the agent, Plaintiff once again verified the information previously observed on the Property Radar website and the Chicago Title Profile – confirming the deed's first position on title.

21. The next day, on March 2, 2017, at or about 10:30 a.m., Plaintiff called SBS to inquire as to the timing of his receipt of the trustee's deed upon sale. Plaintiff also asked the SBS representative to confirm that the trust deed he purchased on May 1' 2017 was in first position. SBS expressly refused to provide such confirmation.

22. After further inquiry on March 2, 2017, Plaintiff learned that the trust deed purchased on March 1st may have been in second position behind a deed of trust held by Bank of America. Though Plaintiff has attempted to confirm the precise amount of Bank of America's existing lien, as of the date of this Complaint, specific information is not available. However, based on currently available information, Plaintiff currently believes the value of Bank of America's first deed of trust is in excess of $430,000.

23. Upon information and belief, and thereon alleged, the Property's estimated fair market value at the time of purchase was $550,000.00. As a result of Plaintiff's $502,000 bid and an existing first mortgage in excess of $430,000, Plaintiff's effectual purchase price amounted to approximately $932,000 – on a home valued at approximately $550,000.

24. On the same day (March 2nd) at or about 12:20 p.m., Plaintiff called his personal bank, Defendant BoSC, and asked that BoSC immediately stop payment on all cashier's checks issued on March 1, 2017.

25. Based on the information displayed on the Property Radar website and on SBS' failure to disclose placement of the loan on title and/or its beneficiary (preventing anyone else from confirming it's priority), Plaintiff initially believed a misrepresentation had been made. As a result, he instructed his legal counsel to provide notice to Defendant SBS.

\\\

2017.03.13_Complaint.pdf

26. On behalf of Plaintiff, counsel provided written notice to SBS via e-mail and facsimile between 3:30 and 4:00 p.m. on March 2, 2017. In such notice, SBS was advised that Plaintiff, having learned the true nature of the trust deed's position on title, no longer wished to purchase the Property and had asked that his bank put a stop payment on all cashier's checks tendered in payment to SBS.

27. On March 3, 2017, Plaintiff's counsel received a telephone call from SBS representative, Mitchell Willet. After counsel advised Mr. Willet of Plaintiff's concerns and reiterated Plaintiff's desire to terminate the transaction, Mr. Willet said he would communicate Plaintiff's concerns to the foreclosing bank, Defendant BoSC, and that it would be the bank's decision whether to terminate the transaction.

28. On the same day (March 3d), Plaintiff learned that his personal bank, Defendant BoSC, was also the foreclosing/beneficiary bank under the trust deed he had just purchased. As such, Plaintiff realized that the cashier's checks used to pay SBS would ultimately be distributed to BoSC, e.g. Defendant BoSC would personally benefit by refusing Plaintiff's March 2nd request to stop payment on the cashier's checks.

29. With SBS' stated refusal to terminate the transaction and refund Plaintiff's payment, Plaintiff placed a telephone call to his bank's main office in Del Mar, California at 3:09 and asked to speak with the bank's president, Nathan Rogge. Mr. Rogge's secretary said he was currently on the telephone and could not take the call. However, when Plaintiff arrived at the office at 3:20 and asked to speak with Mr. Rogge in person, his secretary claimed that Mr. Rogge had left for the day and that she would leave a message for him.

30. Later that afternoon, Plaintiff received a call from one of BoSC's attorneys who set up a meeting on March 6th to discuss Plaintiff's belief that a material defect in the process of the foreclosure sale resulted in his loss of $502,000.

31. When Plaintiff met with BoSC's attorney, Plaintiff explained the situation and his belief that, due to a material defect in the process of the foreclosure sale (then believed to be a misrepresentation), Plaintiff suffered a loss of $502,000. During that meeting, Plaintiff specifically asked that BoSC rescind the sale and refund all funds paid to SBS. In the alternative, Plaintiff presented several compromised offers to BoSC in an attempt to mitigate Plaintiff's loss and make BoSC whole. In

2017.03.13_Complaint.pdf

concluding the meeting, BoSC's attorney advised that he would meet with his client and get back to Plaintiff with the bank's response.

32. On March 8, 2017, BoSC provided notice to Plaintiff that it would not rescind the transaction, nor would it entertain a compromised resolution.

33. On March 9, 2017, Plaintiff sent formal Notice of Rescission and Request for Restitution ("Notice of Rescission") to SBS. A true and correct copy of Plaintiff's Notice of Rescission is attached hereto as Exhibit "1." Plaintiff's Notice of Rescission was sent to SBS via electronic mail addressed to SBS' listed agent for service of process Mitchell J. Willet (mitch@sbstrustdeed.com) at or about 3:37 p.m. and by facsimile (818-874-9500) at or about 3:28 p.m. Plaintiff's Notice of Rescission was also copied via e-mail to Defendant BoSC's counsel (ebarry@mulvaneybarry.com) at or about 3:37 p.m.

34. In addition to placing Defendants on notice of Plaintiff's election to rescind the foreclosure sale, the Notice of Rescission also instructed SBS not to distribute any funds received from Matson and to direct any and all SBS employees or representatives of the same pending resolution of all legal claims.

**RESCISSION & RESTITUTION**
**(As Against All Defendants)**
**[Cal. Civ. Code §§ 1577 and 1689]**

35. Plaintiff refers to, and incorporates by reference herein, each and every allegation contained in all preceding and subsequent paragraphs as if fully set forth herein.

36. Upon information and belief, and thereon alleged, available equity in an amount greater than $1 is a basic assumption of any buyer in a private-party purchase of residential real property in foreclosure. Additionally, a trust deed's numerical position on title is a material term to any contract to purchase real property via a foreclosure sale.

37. It would be unconscionable to command enforcement of a contract wherein, the moment after the agreement is executed, the buyer would sustain a loss in excess of $400,000 based on a mistake of fact, while the seller enjoys a windfall. Nor would it be equitable to compel the enforcement of a contract wherein the buyer is forced to suffer substantial loss when the seller can be easily restored to status quo.

2017.03.13_Complaint.pdf

38. At the time of Plaintiff's $502,000 bid on the Property, he was under the mistaken belief that the trust deed at auction was in first position on the Property. As such, when Plaintiff submitted his $502,000 bid, he believed he would benefit from at least $48,000.00 in equity on the Property. Plaintiff never would have submitted a bid for $502,000 had he known that the deed up for auction was in second position behind a first mortgage in an amount sufficient to consume any and all equity in the Property and leave Plaintiff with a net loss of over $400,000.

39. As of the date of this Complaint, it is unclear whether the auctioneer, an SBS' employee and/or agent, knew that the trust deed being auctioned was in second position, e.g. as of the date of this Complaint, Plaintiff is unaware of whether the mistake is unilateral or mutual.

40. However, given two other bidders who participated in bidding up the price to an amount in excess of $500,000, it appears that such other bidders were acting with the same mistaken belief as Plaintiff. And, though the opening bid was only $71,000, at no time, even after the bids exceeded all equity in the property, did the auctioneer ever disclose the trust deed's second position on title. As such, Plaintiff's mistaken belief was reasonable under the circumstances of this transaction.

41. For the reasons set forth herein, Plaintiff's consent to the foreclosure purchase transaction was not real, mutual or free in that it was obtained solely through mistake.

42. SBS was, or should have been aware, of Plaintiff's mistake in that Plaintiff's bid was significantly in excess of the second deed's value and would be wholly consumed by the first mortgage on the Property.

43. As a result of the mistake of fact, Plaintiff was injured in that if the transaction is not rescinded he will lose a substantial sum of money in the amount of at least $400,000.

44. Plaintiff would not have given his consent to the contract if the mistake had not existed.

45. Upon information and belief, and thereon alleged, Defendants can immediately be placed in status quo because, until a new trustee's deed is recorded – which will not happen as Plaintiff has not yet received nor will he record a trustee's deed in relation to this foreclosure transaction – Defendant BoSC will still hold security on the Property and SBS can simply complete a new foreclosure sale at its request and for its benefit.

\\\

2017.03.13_Complaint.pdf

46. Plaintiff seeks rescission of the foreclosure transaction because Matson has no other adequate remedy at law. If the contract is not rescinded, Plaintiff will suffer irreparable harm and injury because Matson will be deprived of the benefit of his bargain in that he will lose nearly $400,000.00 where he expected to gain at least $48,000.

47. Based on the foregoing, and as stated at paragraphs 30 and 31, above, Plaintiff notified Defendants in writing that he was electing to rescind the purchase transaction based on mistake. A copy of that notice is attached hereto as Exhibit "1" and is made a part hereof. Defendants refused and continue to refuse to restore Plaintiff, in whole or in part, the consideration paid by Plaintiff or to recognize that the purchase transaction has been rescinded.

**PRAYER**

WHEREFORE, Plaintiff prays for entry of judgment as follows:

1. That this Court declare that the foreclosure purchase transaction has been rescinded;

2. That Defendants be ordered to pay Plaintiff restitution in the amount of $505,000.00 with interest thereon at the legal rate per annum beginning the date of rescission on March 9, 2017;

3. For costs of suit incurred herein; and

4. For such other relief as the Court deems just and proper.

Respectfully submitted,

KIMBALL, TIREY & ST. JOHN LLP

VIA FAX

Dated this 13th day of March, 2017.

Rebecca J. Fortune
Attorney for Plaintiff, Matthew J. Matson

2017.03.13_Complaint.pdf

**VERIFICATION**

I, Matthew J. Matson, am the plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 12th day of March, 2017.

Matthew J. Matson

VIA FAX

2017.03.13_Complaint.pdf

# EXHIBIT "1"

2017.03.13_Complaint.pdf

LAW OFFICES OF
**Kimball, Tirey & St. John LLP**
7676 Hazard Center Drive, Suite 900-A
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692
www.kts-law.com

March 9, 2017

**Rebecca J. Fortune, Partner**
Business and Real Estate Group
E-mail: rebecca.fortune@kts-law.com

S.B.S. Trust Deed Network
Attn: Mitchell J. Willet
31194 La Baya Drive, Suite 106
Westlake Village, California 91362

**VIA REGULAR MAIL;**
**VIA FAX (818) 874-9500**
**and VIA E-MAIL**
**(mitch@sbstrustdeed.com)**

**RE:** **TS 2016-1691**
**701 KETTNER BLVD. #124, SAN DIEGO, CALIFORNIA**

**NOTICE OF RESCISSION & REQUEST FOR RESTITUTION**

Dear Mr. Willet:

My name is Rebecca Fortune and I'm writing to you on behalf of my firm's client, Matthew Matson. It's my understanding that you spoke with my partner, Jamie Sternberg, at the end of last week regarding a foreclosure sale wherein Mr. Matson tendered payment in the amount of $505,000.00 in relation to his intended purchase of a first deed of trust secured against the real property located at 701 Kettner Boulevard #124, San Diego, California (the "Property"). Please address all future correspondence on this matter to my attention.

Given the extraordinary nature of this transaction, Mr. Matson was understandably distressed at the time of Ms. Sternberg's letter to you of March 2nd. Now that we've had additional time to better analyze the facts giving rise to this issue, what was once believed to be a misrepresentation, now appears to be a mistake, either mutual or unilateral. As such, please accept this correspondence as **notice of Matthew Matson's election to rescind** the transaction pursuant to California Civil Code Section 1577.

Because Mr. Matson has not yet received or recorded the trustee's deed – and will reject the same upon subsequent receipt – there is nothing of value for him to restore to S.B.S. I ask that you please refund the balance of the purchase price to Mr. Matson at your earliest convenience. To the extent S.B.S. incurred any reasonable fees and/or costs in facilitating the foreclosure sale, please feel free to reduce the amount refunded by such amount. If S.B.S. does not intend to refund Mr. Matson's tender as requested, given the amount at issue, please understand that he has no choice but to pursue a formal claim for rescission and restitution. As a result, and pending legal resolution, please **not to distribute** any portion of the $505,000.00 paid by cashier's check to S.B.S. Trust Deed Network at the time of sale on March 1, 2017 and immediately advise any and all responsible individuals and/or entities of this request.

2017.03.13_Complaint.pdf



Please know that my client is very much interested in avoiding unnecessary legal action. If you would like to discuss this matter further, please contact me at (619) 881-4999.

Very truly yours,

KIMBALL, TIREY & ST. JOHN

Rebecca J. Fortune
Partner

Cc: Everett G. Barry, Jr., Esq. (via ebarry@mulvaneybarry.com)

2017.03.13_Complaint.pdf

03/09/2017 THU 15:29 FAX 001

*********************
*** FAX TX REPORT ***
*********************

TRANSMISSION OK

| | |
|---|---|
| JOB NO. | 4798 |
| DESTINATION ADDRESS | 18188749500 |
| SUBADDRESS | |
| DESTINATION ID | |
| ST. TIME | 03/09 15:28 |
| TX/RX TIME | 01'12 |
| PGS. | 3 |
| RESULT | OK |

L A W O F F I C E S O F

**Kimball, Tirey & St. John LLP**

**Business and Real Estate Group**
7676 Hazard Center Drive, Suite 900 ◆ San Diego, CA 92108
(619) 231-1422 ◆ Fax (619) 234-7692

TIME FAXED
am / pm
BY
(initial)

# FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **To:** | Mitchell Willet | **From:** | Rebecca J. Fortune |
| **Fax:** | (818) 874-9500 | **Pages:** | 3 including cover sheet |
| **Phone:** | | **Date:** | Thursday, March 09, 2017 |
| **Re:** | TS 2016.1691 | **cc:** | |

☐ **Transmitted via facsimile only** ☒ **Copy to follow via First Class mail**

☐ **Copy to follow via overnight delivery** ☐ **Other:**

☒ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

- **Comments:**

Please see attached.

2016.03.13_Case Assignment_Taylor.pdf

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego, CA 92101-3827
BRANCH NAME: Central
TELEPHONE NUMBER: (619) 450-7072

PLAINTIFF(S) / PETITIONER(S): Matthew J Matson

DEFENDANT(S) / RESPONDENT(S): SBS Trust Deed Network et.al.

MATTHEW J MATSON VS SBS TRUST DEED NETWORK [IMAGED]

| | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 37-2017-00008676-CU-OR-CTL |

## CASE ASSIGNMENT

Judge: Timothy Taylor Department: C-72

**COMPLAINT/PETITION FILED:** 03/13/2017

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/11/2017 | 09:45 am | C-72 | Timothy Taylor |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

---

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

# EXHIBIT “2”

FILED
Clerk of the Superior Court

MAR 16 2017

By: K. Mulligan, Deputy

Rebecca J. Fortune (SBN 229921)
**KIMBALL, TIREY & ST. JOHN LLP**
7676 Hazard Center Drive, Suite 900-B
San Diego, California 92108
Telephone: (619) 231-1422
Facsimile: (619) 234-7692
E-mail: Rebecca.Fortune@kts-law.com

Attorney for Plaintiff, Matthew J. Matson.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| MATTHEW J. MATSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>S.B.S. TRUST DEED NETWORK, a California corporation; BANK OF SOUTHERN CALIFORNIA, N.A.; and DOES 1 TO 10,<br><br>Defendants. | Case No.: 37-2017-00008676-CU-OR-CTL<br><br>[~~PROPOSED~~] ORDER GRANTING TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED<br><br>**<u>Ex Parte Hearing</u>:**<br>Date: March 16, 2017<br>Time: 8:30 a.m.<br>Dept.: C-62<br><br>**<u>OSC Hearing</u>:**<br>Date: TBD<br>Time: TBD<br>Dept: C-62<br><br>Case Filed: March 13, 2017 |

The Court, having considered Plaintiff MATTHEW J. MATSON's *Ex Parte* Application for Temporary Restraining Order, the Memorandum of Points and Authorities in support thereof, Plaintiff's Verified Complaint all other pleadings on file in this action, as well as all oral arguments, if any at the time of hearing and good cause appearing:

\\\

\\\

\\\

**TEMPORARY RESTRAINING ORDER**

**IT IS HEREBY ORDERED** that Defendants S.B.S. TRUST DEED NETWORK ~~and/or BANK OF SOUTHER CALIFORNIA, N.A.~~ and their officers, directors, agents and employees, and all other persons acting under, in concert with, or for them who have actual or constructive knowledge of this Order: Shall not distribute, transfer, encumber, dispose of, dilute or in any other way diminish ~~the~~ Any undistributed funds from the $505,000.00 tendered by Plaintiff MATTHEW J. MATSON to Defendant S.B.S. TRUST DEED NETWORK via three cashier's checks endorsed on March 1, 2017. RJ

**ORDER TO SHOW CAUSE**

**IT IS HEREBY ORDERED TO SHOW CAUSE** at 8:30 am on March 30, 2017, or as soon thereafter as counsel may be heard in Department C-62 of the above entitled Court located at 330 W. Broadway, San Diego, California 92101, why you, your agents, employees, assigns, representatives, attorneys, and all those acting in concert with you, should not be restrained and enjoined pending trial of this action from: distributing, transferring, encumbering, disposing of, diluting or in any other way diminishing ~~the~~ undistributed funds remaining from the $505,000.00 tendered by Plaintiff MATTHEW J. MATSON to Defendant S.B.S. TRUST DEED NETWORK via three cashier's checks endorsed on March 1, 2017. RJ

This Temporary Restraining Order and Order to Show Cause and supporting papers shall be served on the Defendants no later than end of business on 3/17 by personal service service. Proof of such service shall be filed and delivered in the manner provided by Code of Civil Procedure §527.

The following briefing schedule shall apply:

1. Any Opposition by Defendant(s) to this Temporary Restraining Order and Order to Show Cause shall be filed directly with this court in Department C-62 and served on counsel for Plaintiff no later than 3/24 @ 12:00 pm. This service may be by any method allowed by law, including by e-mail transmission and overnight delivery.

2. Any Reply of Plaintiff to Defendants' opposition shall be filed and served on the Defendants no later than 3/27 end of business This service may be by any method allowed by law, including by e-mail transmission and overnight delivery. Courtesy copies of all pleadings to be filed in Dept 62.

3. The Restraining Order granted herein shall expire on March 30 at 5P.M.

4. Plaintiff shall not be required to post a bond for this temporary order.

Dated: March 16, 2017

Judge of the Superior Court

RONALD L. STYN

# EXHIBIT "3"

**SUPERIOR COURT OF CALIFORNIA,**

COUNTY OF SAN DIEGO

HALL OF JUSTICE

TENTATIVE RULINGS - March 29, 2017

EVENT DATE: 03/30/2017 EVENT TIME: 08:30:00 AM DEPT.: C-62

JUDICIAL OFFICER: Ronald L. Styn

CASE NO.: 37-2017-00008676-CU-OR-CTL

CASE TITLE: MATTHEW J MATSON VS SBS TRUST DEED NETWORK [IMAGED]

CASE CATEGORY: Civil - Unlimited CASE TYPE: Other Real Property

EVENT TYPE: Motion Hearing (Civil)

CAUSAL DOCUMENT/DATE FILED:

---

The court rules as follows on Plaintiff's request for issuance of a preliminary injunction.

Plaintiff states he seeks to enjoin Defendant S.B.S. Trust Deed Network from transferring funds pending resolution of this case on the merits. The evidence before the court is that, following distribution of $417,879.71 to Defendant Bank of Southern California, N.A., there exists a balance of $83,533.45 held by SBS.

SBS does not oppose Plaintiff's request for issuance of a preliminary injunction. The only party opposing this motion is the Bank. However, as set forth above, Plaintiff seeks to enjoin SBS, not the Bank, from transferring the funds held by SBS.

To have standing, a party must be beneficially interested in the controversy; that is, he or she must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796, 166 Cal.Rptr. 844, 614 P.2d 276.)
*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315. The court finds the Bank fails to establish its interest in the funds held by SRS. Absent an interest, the Bank fails to establish its standing to oppose issuance of the preliminary injunction.

The court considers this motion unopposed.

In exercising its discretion whether to issue a preliminary injunction, "the trial court *must consider 'two interrelated factors,'* specifically, the likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction does not issue against the harm to be suffered by defendants ... if it does." (*King v. Meese, supra,* 43 Cal.3d at p. 1226, 240 Cal.Rptr. 829, 743 P.2d 889, italics added; accord *Butt v. State of California* (1992) 4 Cal.4th 668, 677–678, 15 Cal.Rptr.2d 480, 842 P.2d 1240.)

*Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 341–342.

Plaintiff must also establish irreparable harm. *White v. Davis* (2003) 30 Cal.4th 528, 554. ["To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits."]
***Irreparable Harm***

The court finds the ability of SBS as trustee, to (absent issuance of a preliminary injunction) distribute the held funds to third-party creditors sufficient to establish irreparable harm – especially when considering evidence of a junior lien held by the United States government.

***Probability of Prevailing***

The court finds Plaintiff establishes a probability of prevailing on the merits.

The court is persuaded by Plaintiff's reliance on *Angell v. Superior Court* (1999) 73 Cal.App.4th 691. *Angell*, referring to *Moeller v. Lien* (1994) 25 Cal.App.4th 822, explains,

The court said: "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.]" (*Moeller v. Lien, supra,* 25 Cal.App.4th 822*,* 831.) **However, the conclusive presumption in favor of the bona fide purchaser (Civ. Code, § 2924) does not take effect until delivery of a trustee's deed.** "Although a nonjudicial foreclosure sale is generally complete upon acceptance of a bid by the trustee, the conclusive presumption does not apply until a trustee's deed is delivered. . . .

[Emphasis added.]

*Angell,* 73 Cal.App.4th at 700.

Plaintiff submits evidence that Plaintiff rejected delivery of the trustee's deed. Under the authorities set forth above, because there has been no delivery of the trustee's deed, the conclusive presumption of CC § 2924 does not take effect.

*Angell* goes on,

"In order to challenge the sale successfully there must be evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale. The mere inadequacy of price, standing alone, does not justify setting aside the trustee's sale**,** but **the sale can be set aside where there is a gross inadequacy of the price paid at the sale, together with a slight irregularity, unfairness, or fraud.**" (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:154, pp. 506-507, fns. omitted.)

[Emphasis added.]

*Angell,* 73 Cal.App.4th at 700. The current section of Miller & Star discussing this issue, 5 Miller & Star California Real Estate § 13:250 (4th ed.), cites to several cases including *Millennium Rock Mortg., Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804, as modified on denial of reh'g (Dec. 17, 2009), order vacated (Dec. 22, 2009), as modified on denial of reh'g (Dec. 22, 2009)

" 'While mere inadequacy of price, standing alone, will not justify setting aside a trustee's sale, *gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside.*' " (*Bank of Seoul & Trust Co. v. Marcione* (1988) 198 Cal.App.3d 113, 119, 244 Cal.Rptr. 1, italics added, quoting *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 323, 211 Cal.Rptr. 582; see *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361, 233 Cal.Rptr. 923 [after sale but prior to deed delivery, trustee discovered defect in giving notice; sale held voidable by the trustee]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 702, 86 Cal.Rptr.2d 657 [material mistake regarding the reinstatement amount discovered after acceptance of bid but prior to delivery of deed justified trustee's refusal to complete the transaction].)

*Millennium Rock Mortg.,* 179 Cal.App.4th at 810.

Although *Angell*, *Millennium* and *Bank of Seoul* all involve instances of irregularity, these cases also specifically recognize that a showing of gross inadequacy combined with "slight unfairness **or** irregularity" are sufficient to set a sale aside. The court finds Plaintiff establishes gross inadequacy of price and at least slight unfairness.

The verified complaint alleges that

23. Upon information and belief, and thereon alleged, the Property's estimated fair market value at the time of purchase was $550,000.00. As a result of Plaintiff's $502,000 bid and an existing first mortgage in excess of $430,000, Plaintiffs effectual purchase price amounted to approximately $932,000 - on a home valued at approximately $550,000.

The court finds this evidence sufficient to establish gross inadequacy of the price paid by Plaintiff at the sale. Similar to the consequence of the trustee's mistake in *Angell*, (resulting in an unpaid balance of over $2,400,000.00), the auctioneer's mistake in *Millennium Rock Mortg.* (an incorrect setting of an opening bid) and the crier's mistake in Bank of Seoul (denial of plaintiffs' opportunity to bid), the consequence of Plaintiff's bid is that Plaintiff paid far in excess of the value of the Property at the sale.

The court finds this same evidence, combined with the windfall to the Bank, the potential windfall to the borrower and the potential windfall to third-party creditors, all as a result of Plaintiff's bid, sufficient to establish substantial unfairness. Unless Plaintiff obtains the relief he seeks, the Bank, the borrower and third-party beneficiaries will receive a windfall at the significant expense of Plaintiff.

Under *Angell*, a showing of gross inadequacy of the price paid together with "even slight unfairness" are sufficient to set aside the sale.

***Balance of Equities***

For the reasons set forth above, the court finds Plaintiff establishes inadequacy of legal remedy and a probability of prevailing. Considering these circumstances and the absence of any evidence from SBS to the contrary, the court finds the harm to Plaintiff should an injunction not issue outweighs any harm to SBS should the injunction issue. Therefore, the court finds the balance of harms favors Plaintiff.

The court signs the Preliminary Injunction submitted by Plaintiff.

# EXHIBIT "4"

**SUPERIOR COURT OF CALIFORNIA**
**SAN DIEGO**
**330 West Broadway**
**San Diego, CA 92101**
**(619) 450-7275**

## NOTICE TO FILING PARTY

Matthew J Matson vs SBS Trust Deed Network [Imaged]

**Case Number: 37-2017-00008676-CU-OR-CTL**

**We are unable to process the attached Request for Dismissal without Prejudice - Party for the reasons indicated below:**

Other: OUR RECORDS REFLECT THAT THIS CASE WAS REMOVED TO FEDERAL COURT ON 5/1/17.

Returned via: ADVANCED ATTORNEY SERVICES

Please enclose a self-addressed stamped envelope to expedite receipt of returned papers.

Papers returned to: Matson SDRE Group LLC, Matthew J Matson

Clerk of the Court,

Date: 05/03/2017

S. Klais
S. Klais, Deputy

Returned via:

Return By Courier

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 229921
NAME: Rebecca J. Fortune
FIRM NAME: Kimball, Tirey & St. John LLP
STREET ADDRESS: 7676 Hazard Center Drive, Suite 900
CITY: San Diego STATE: CA ZIP CODE: 92108
TELEPHONE NO.: (619) 231-1422 FAX NO.: (619) 234-76952
E-MAIL ADDRESS: rebecca.fortune@kts-law.com
ATTORNEY FOR (Name): Matthew J. Matson and Matson SDRE Group, LLC

FOR COURT USE ONLY

FILED
Clerk of the Superior Court
CANCEL
MAY 2 '17 PM 2:26

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS:
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Central

Plaintiff/Petitioner: MATTHEW J. MATSON ET AL.
Defendant/Respondent: S.B.S. TRUST DEED NETWORK ET AL.

**REQUEST FOR DISMISSAL**

CASE NUMBER: 37-2017-00008676-CU-OR-CTL

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [ ] With prejudice (2) [x] Without prejudice
   b. (1) [x] Complaint (2) [ ] Petition
   (3) [ ] Cross-complaint filed by *(name):* on *(date):*
   (4) [ ] Cross-complaint filed by *(name):* on *(date):*
   (5) [ ] Entire action of all parties and all causes of action
   (6) [x] Other *(specify):** As against nominal Defendants Robert M. Ehnow and Colette K. Ehnow only.
2. *(Complete in all cases except family law cases.)*
   The court [ ] did [x] did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: May 1, 2017
Rebecca J. Fortune
(TYPE OR PRINT NAME OF [x] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
[x] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Cross Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

(SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
[ ] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Cross Complainant

*(To be completed by clerk)*

4. [ ] Dismissal entered as requested on *(date):*
5 [ ] Dismissal entered on *(date):* as to only *(name):*
6. [ ] Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. [ ] Attorney or party without attorney notified on *(date):*
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
   [ ] a copy to be conformed [ ] means to return conformed copy

Date: Clerk, by ______________________________, Deputy



Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>FOR THE COUNTY OF SAN DIEGO | | FOR COURT USE ONLY<br>CANCEL<br>F 02 2017 D |
|---|---|---|
| **TITLE OF CASE**<br>MATSON v. SBS TRUST DEED NETWORK, et al. | | |
| **ATTORNEY NAME & ADDRESS**<br>Rebecca J. Fortune (SBN 229921)<br>KIMBALL, TIREY & ST. JOHN LLP<br>7676 Hazard Center Drive, Suite 900-B<br>San Diego, CA 92108 (619) 231-1422 | | |
| **ATTORNEY FOR:**<br>Matthew J. Matson | **HEARING DATE-TIME-DEPT** | **CASE NUMBER**<br>37-2017-00008676-CU-OR-CTL |

## PROOF OF SERVICE

I am employed in the City of San Diego, County of San Diego, State of California. I am over the age of 18 years and not a party to the within mentioned action. My business address is 7676 Hazard Center Drive, Suite 900, San Diego, California 92108. On May 2, 2017, I caused the documents named below to be served on the parties in this action as follows:

**DOCUMENTS SERVED:**

1. Request for Dismissal

**SERVED UPON:**

Christopher Ghio
Mulvaney Barry Beatty Linn & Mayers LLP
401 West A Street, 17th Floor
San Diego, CA 92101

S.B.S. Trust Deed Network
Attn: Mitchell J. Willet
31194 La Baya Drive, Suite 106
Westlake Village, CA 91362

Maria Roberts
Johnson, Greene and Roberts
402 West Broadway, Suite 1025
San Diego, CA 92101

☒ **(BY MAIL)** I am readily familiar with Kimball, Tirey & St. John LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service. Kimball, Tirey & St. John LLP's practice is that correspondence is deposited with the United States Postal Service on the same day that it is placed for collection in the ordinary course of business. I placed a true and correct copy of the document(s) listed above in an envelope, addressed as indicated above. I sealed the envelope and placed it for collection and mailing on the date indicated above following ordinary business practices.

☒ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 2, 2017, at San Diego, California.

Jeff Johnson